**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RONALD REED,       ) | |
|       ) | |
|    Plaintiff,       ) | |
|       ) | |
|      v.       ) | |
|       ) | |
| CHICAGO POLICE OFFICERS    ) | Case No. 23-CV-002247 |
| ANGELO GALLEGOS (#14570) and  ) | |
| MICHAEL WILSON (#17643), and  ) | |
| SUPERINTENDENT DAVID BROWN,  ) | |
| and CITY OF CHICAGO       ) | |
|       ) | Judge Sharon Johnson Coleman |
|       ) | |
|    Defendant.       ) | |
|       ) | |
|       ) | |
|       ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald Reed ("Plaintiff") filed his First Amended Complaint against Chicago Police

Officers Angelo Gallegos (#14570) and Michael Wilson (#17643) ("Defendant Officers") and

Superintendent David Brown and the City of Chicago (together, the "City Defendants") alleging

constitutional violations under 42 U.S.C. § 1983, including claims against the City Defendants under

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and state law

claims.  Before the Court is the City Defendants' partial motion to dismiss the *Monell* claims against

Superintendent Brown and the City and the failure to intervene claim against Superintendent Brown.

For the following reasons, the Court grants City Defendants' partial motion to dismiss [31] with

respect to all claims against Superintendent Brown and denies the partial motion to dismiss with

respect to the *Monell* claim against the City.

**BACKGROUND**

The following facts are accepted as true for the purpose of resolving the City Defendants'
partial motion to dismiss.

On September 13, 2023, Plaintiff filed his First Amended Complaint.  On June 26, 2024, the
parties filed a joint motion to sever plaintiffs, which this Court granted on July 16, 2024.  Plaintiff's
claims and the partial motion to dismiss, as it applies to Plaintiff's claims, remained with this Court.

On May 30, 2020, Plaintiff traveled to downtown Chicago, via skateboard, to join a
demonstration near the Trump Tower, to protest the police killings of George Floyd, Breonna
Taylor, and other instances of racism in the United States.  While at the demonstration, Plaintiff
alleges that he locked arms with demonstrators as the Chicago Police Department ("CPD") officers
began to advance and push against the demonstrators.  Plaintiff alleges that a CPD officer grabbed
his skateboard, pulling it away from him, which, in turn, forced Plaintiff into a crowd of officers.

While in the crowd, Plaintiff alleges that one or more CPD officers began striking Plaintiff's
body and head with batons and ripping chunks of Plaintiff's hair, which he wore in dreadlocks, from
his scalp, causing him to bleed.  As Plaintiff was bleeding from his head, Plaintiff alleges that CPD
officers began taunting him, saying "You have STDs!  You have STDs!"  Plaintiff alleges that the
CPD officers took his property, including his skateboard, cell phone, and bag of personal
belongings, and discarded it.  When Plaintiff asked the CPD officers to return his property, they
allegedly responded "Fuck your shit."

Plaintiff was arrested and taken into CPD custody where his requests for medical treatment
for his injuries were denied.  Plaintiff was released the following day and charged with a violation of
a municipal ordinance, which was later terminated in his favor.  Following his release from CPD
custody, Plaintiff obtained medical treatment and received three staples to his head.

Plaintiff alleges that the violent treatment he incurred at the May 30, 2020, demonstration (the "Incident") was not an isolated occurrence, but rather part of a long-standing practice perpetrated by the CPD. Plaintiff alleges that these violations continue to occur despite the City being subject to a consent decree, which was established in 2019 between the State of Illinois and the City to remedy the policy and practice violations of the CPD (the "Consent Decree"). Plaintiff contends that the CPD's failure to comply with the Consent Decree's police reform deadlines along with its illegal and violent response to the summer 2020 protests demonstrate the failure of the Consent Decree to create any meaningful change in the CPD.

To support his allegations, Plaintiff cites various documents in his First Amended Complaint about the CPD's unjustified use of excessive force against protestors that occurred prior to and after the Incident. Prior to Plaintiff's injuries, Plaintiff points to several protests – beginning in 1990 to 2016 – where the CPD used excessive force on protestors. Plaintiff also discusses a 2017 Department of Justice ("DOJ") report that outlines a pattern of excessive force used by the CPD prior to the Incident. As for continued violations following the Incident, Plaintiff cites the City of Chicago Office of Inspector General ("OIG") Report which describes the CPD's failures to meet reporting requirements concerning the use of force and an Independent Monitoring Team ("IMT") Report – issued under the Consent Decree – that outlines CPD's handling of the summer 2020 protests and the City's failure to implement policies or training to direct CPD officers to effectively respond to the protests.

On February 3, 2024, Plaintiff filed a Notice of Supplemental Authority in Support of Their Response to Defendant City of Chicago and Defendant Superintendent Brown's Partial Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff cited a Northern District of Illinois court's ruling in *Cosby v. Rodriguez* that ruled on a partial motion to dismiss filed by the City Defendants in a substantially similar case.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

## DISCUSSION

The City Defendants move to dismiss Count VI (failure to intervene) and Count VIII (*Monell*).

### I. Count VI: Failure to Intervene

Plaintiff alleges a failure to intervene claim against Superintendent Brown, in his individual capacity, for failing to prevent the violations of Plaintiff's constitutional rights despite the opportunity and duty to do so. The City Defendants contend that Plaintiff fails to allege sufficient facts to support a failure to intervene claim as he does not claim that Superintendent Brown was present at the Incident, had any realistic opportunity to intervene during the Incident, nor that the Incident was committed by Superintendent Brown's direct subordinates with his knowledge. In response, Plaintiff alleges that, even if Superintendent Brown was not present at the Incident, he maintained and encouraged the widespread practice of CPD officers using excessive force against

protestors and failed to stop the CPD officers systemic use of violence against protestors in summer 2020.

To state a claim for failure to intervene, a plaintiff must demonstrate that defendant knew there was a constitutional violation, that defendant had the means to prevent it, and that defendant failed to do so. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). A supervisor can be deemed personally responsible for the conduct of subordinates if the supervisor knew about the unlawful conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. *Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012). Multiple courts in this district have found that "[p]olice officers who were not present on the scene cannot be held liable for failing to intervene in another officer's unconstitutional acts." *Cosby v. Rodriguez,* 711 F.Supp.3d 983, 1008 (N.D. Ill. 2024) (Pallmeyer, J.); *Moore v. City of Chicago*, 209 F. Supp. 3d 1016, 1033 (N.D. Ill. 2016) (Castillo, J.); *Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 942 (N.D. Ill. 2014) (Lee, J.).

The Court finds the supplemental authority filed by Plaintiff instructive. In *Cosby v. Rodriguez,* the court was presented with an essentially identical partial motion to dismiss filed by the same defendants who filed the pending partial motion to dismiss before this Court. The claims the partial motion to dismiss sought to dismiss in the *Cosby* case are essentially identical to the claims and supporting facts the partial motion seeks to dismiss in the case pending before this Court.

In *Cosby,* the court dismissed the failure to intervene claim against Superintendent Brown, finding that plaintiff failed to make any allegation that Superintendent Brown knew that the alleged officer was using force against the plaintiff on the date plaintiff's injuries occurred, that the officer had a habit of using excessive force against protestors, and that Superintendent Brown knew of this or turned a blind eye to it. *Cosby,* 711 F.Supp.3d at 1008. The court concluded that because the broad allegations against Superintendent Brown for liability for failure to intervene were at a protest-

wide level, not specific to Superintendent Brown's individual actions, dismissal was appropriate. *Id.* at 1009.

The same applies here. Plaintiff makes no allegation that Superintendent Brown knew that the Defendant Officers used force against Plaintiff on the date of the Incident, that Defendant Officers had a habit of using excessive force against protestors, or that Superintendent Brown knew of this and turned a blind eye to it. Nor did Plaintiff allege that Superintendent Brown had any realistic opportunity to intervene and prevent the specific use of force allegedly inflicted upon Plaintiff. Like the failure to intervene claim in *Cosby,* Plaintiff's allegations against Superintendent Brown only allege liability at the protest-wide level, not as it relates to Superintendent Brown's knowledge of Defendant Officers' actions. The Court dismisses Count VI.

## II.    **Count VIII:** *Monell*

Under *Monell*, a plaintiff must "prove that a municipality, either through an express policy or an implied policy of inaction, took 'deliberate' action that was the 'moving force' behind a constitutional injury." *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022). To do this, a plaintiff must show either "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Story v. Dart*, No. 19-cv-2476, 2023 WL 2612622, at *6 (N.D. Ill. Mar. 23, 2023) (Seeger, J.).

Like *Cosby,* Plaintiff alleges two primary theories of *Monell* liability. First, Plaintiff alleges that the City Defendants were deliberately indifferent to the CPD's widespread practice that caused Plaintiff's injuries.[1] Second, Plaintiff alleges that Superintendent Brown acted as the "final

---

[1] As in *Cosby,* Plaintiff names Superintendent Brown in his official capacity along with the City as the second defendant in his *Monell* claim. This is redundant. Suit against the police superintendent "in his official capacity only… is the equivalent of suing the city." *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir.

policymaker" by encouraging and maintaining unconstitutional policies and practices within the CPD which caused Plaintiff's injuries.

### A. Widespread Practice

Plaintiff's first theory of *Monell* liability is an allegation of a widespread practice. In order to show the existence of a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law, a plaintiff must present evidence that the circumstances plaintiff endured was not an isolated incident. *Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005). There is no requirement that the custom or practice meet a specific numerical quota to be considered widespread under *Monell. See Karney v. City of Naperville,* No: 15-cv-4608, 2016 WL 6082354, at *13 (N.D. Ill. Oct. 18, 2016) (Durkin, J.). A municipal entity becomes liable under a widespread practice theory for failing to take action to prevent the custom or practice from injuring the plaintiff. *See Arrington v. City of Chi.,* No. 17 C 5345, 2018 WL 620036, at *3 (N.D. Ill. Jan. 30, 2018) (Durkin, J.).

Plaintiff alleges that the CPD engaged in numerous, widespread "*de facto* policies, practices, and customs" against protestors that caused his injuries, such as widespread use of excessive force without justification including beating individuals with batons; punching, kicking, kneeing, stomping; use of chemical agents; tackling protestors; use of lethal force to the head and neck of protestors; retaliation against protestors who speak out against police; escalating encounters with protestors through taunts, slurs, pushes, shoves, and acts; falsely arresting protestors; failing to hold officers accountable who violate protestors' rights; and failing to train officers on how to appropriately respond to protestors.

---

1987) (citing *Brandon v. Holt,* 469 U.S. 464, 471–73, 105 S. Ct. 873, 83 L.Ed.2d 878 (1985); *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985). In other words, his addition makes no difference to Plaintiff's *Monell* claim and, therefore, this Court will consider the first theory of *Monell* liability as alleged against only the City for purposes of resolving the claim.

Plaintiff alleges several instances of force against protestors prior to the Incident to support his widespread practice theory. First, Plaintiff alleges several instances where the CPD employed excessive and retaliatory force, similar to the actions Plaintiff experienced, against protestors at demonstrations between 1990 – 2016, well before Plaintiff's injuries occurred in summer 2020. Plaintiff also cites several agency reports, including the DOJ's 2017 Report which concluded that the CPD tolerated a pattern or practice of unjustified force and failed to discipline the offending officers. Plaintiff also points to Superintendent Brown's statements which acknowledged that the CPD suffered from a culture of silence and failure to hold officers accountable.

Plaintiff also alleges widespread use of excessive and retaliatory force after the Incident as evidence of a widespread practice. Plaintiff cites to the *Chicago Reader* report, the OIG Report, and the IMT Protest Report, which all discuss the violent and excessive force CPD used against protestors during summer 2020. Plaintiff alleges his offered evidence is sufficient to sustain a *Monell* claim against the City as it shows that CPD adhered to a widespread practice of use of excessive force without justification prior to, during, and after the Incident.

The City argues that the existence of the Consent Decree, along with the City's efforts to continue to implement it, absolves the City of *Monell* liability. This is not so. While the Consent Decree was enacted to prohibit the conduct which Plaintiff complains of, the law is clear that *Monell* liability may be predicated not only on official or written policies, but also on implicit policies or a gap in expressed policies, or a series of violations that confirm the premise of deliberate indifference. *See Cosby,* 711 F.Supp.3d at 1012 (internal citations and quotations omitted). As explained above, Plaintiff offers substantive evidence that the CPD engaged in a widespread practice during the summer 2020 protests that directly contradicted the Consent Decree. The Consent Decree and the City's efforts to comply with the Consent Decree do not support an alternative finding.

8

Like the *Cosby* court, this Court finds the cases the City cites in support of its partial motion to dismiss are unpersuasive. In *Taylor v. City of Chicago,* the court dismissed plaintiff's complaint where plaintiff failed to allege other specific instances – other than his own experience – to support the existence of a custom or practice. No. 21 CV 2197, 2021 WL 4523203, at *3 (N.D. Ill. 2021) (Shah, J.) As described above, Plaintiff offered sufficient evidence of other instances to support a finding of a widespread practice. In *Anderson v. Allen*, the court dismissed the complaint where plaintiff failed to allege factual content to find that the City's practices were the moving force behind plaintiff's injury. No. 1:19-cv-02311, 2020 WL 5891406, at *3-4 (N.D. Ill. 2020) (Aspen, J.) Again, here, Plaintiff alleges that he suffered an injury due to the CPD's use of excessive force, which the CPD employed against protestors since 1990 and into summer 2020, as confirmed by the cited news and investigatory reports. Such is sufficient to find the City's practices were a moving force behind Plaintiff's injury. Lastly, in *Gomez v. Galman,* a Fifth Circuit court dismissed the *Monell* claim, finding that there was no deliberate indifference where the City of New Orleans entered into a Consent Decree because it showed that the city recognized that there was a problem and agreed to remedy it. could not sustain a *Monell* claim. 18 F.4th 769, 779 (5th Cir. 2021). Here, however, Plaintiff references repeated, specific unconstitutional practices by the CPD and ties the practices directly to the harm suffered by Plaintiff. Even in the face of the Consent Decree, Plaintiff adequately argues that the City failed to implement measures to end CPD officers' widespread practice of using excessive force against protestors. Plaintiff has plausibly alleged that the City was deliberately indifferent to the widespread practice of CPD officers and such deliberate indifference resulted in Plaintiff's injuries. This is enough to support a *Monell* claim against the City at this time.

### B. Final Policymaker

Plaintiff also puts forth a separate theory of *Monell* liability – that Superintendent Brown, as a final policymaker for the City, directed and authorized unlawful conduct. Plaintiff alleges that

Superintendent Brown made all command decisions about CPD's response to protestors during the summer 2020 protests and that he encouraged and permitted CPD officers to target, attack, and harass protestors. Plaintiff also alleges that Superintendent Brown was present at one unidentified protest where he failed to intervene to stop violence and misconduct by CPD officers. The City Defendants argue that Plaintiff relies on conclusory allegations to support this theory.

The Court agrees. Plaintiff makes only bare assertions concerning Superintendent Brown's implementation of a specific policy or practice that was directly traceable to Plaintiff's injuries. Such naked allegations do not rise to the required pleading standard. *See Iqbal,* 556 U.S. at 681. The Court finds that Plaintiff has not plausibly alleged *Monell* liability against Superintendent Brown as a final policy maker.[2]

**CONCLUSION**

For the foregoing reasons, the Court grants City Defendants' partial motion to dismiss [31] with respect to all claims against Superintendent Brown and denies the motion with respect to the *Monell* claim against the City. The City is directed to file an answer to the *Monell* claim within 21 days.

**IT IS SO ORDERED.**

Date: 11/19/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

---

[2] Like the *Cosby* court, this Court notes that Superintendent Brown's behaviors around the time of the protests – as may surface during discovery – may be relevant to Plaintiff's (surviving) deliberate indifference theory of *Monell* liability. To the extent facts uncovered in discovery support the policymaker *Monell* theory, Plaintiff may seek the Court's leave to amend.